UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Sherry Cadell

v.                                     Civil No. 11-cv-394-JD

XL Specialty Insurance Company

O R D E R

Following the death of Anderson Cadell, Jr., his wife, Sherry Cadell, brought suit in state court against XL Specialty Insurance Company ("XL") seeking coverage under an automotive insurance policy issued to Anderson Cadell's employer. XL removed the action to this court and filed a counter-claim seeking a declaratory judgment that it owed no coverage under the insurance policy. The parties have cross-moved for summary judgment on the issue of whether Sherry Cadell is entitled to coverage under the insurance policy.

Background

Anderson Cadell, Jr. ("Anderson") was an employee of United Oil Recovery ("UOR").[1] On December 1, 2009, in the course of his employment with UOR, Anderson drove a UOR truck to a job site in Chelmsford, Massachusetts, and stopped in the breakdown lane of Route 3 North. The truck was registered and garaged in New

---

[1] To distinguish between Anderson and Sherry Cadell, when necessary, Anderson will be referred to by his first name and Sherry will be referred to as "Cadell."

Hampshire. The job entailed collecting containers of hazardous waste materials and hauling them away from the site in the truck.

While Anderson was standing behind the truck preparing to remove the containers, a passenger car, driven by Juanita McKenzie, drove off the road and crashed into him. Anderson was pinned against the back of the truck and died instantly. Another worker, Salvatore Pintone, was also injured in the accident.

McKenzie's vehicle was insured by Travelers Insurance. Sherry Cadell, on behalf of Anderson's estate, settled with Travelers for $10,000.

UOR had an automotive liability policy (the "Policy") through XL, which covered approximately two hundred UOR vehicles, including the truck Anderson drove to the job site. Cadell claimed underinsured motorist ("UIM") coverage under the Policy. XL denied coverage, and Cadell brought this action.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court considers the undisputed facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010). When parties file cross-motions for summary judgment, the court must consider the motions separately to determine whether the Rule 56 standard has been

satisfied by either party. Hartford Fire Ins. Co. v. CNA Ins. Co. (Europe) Ltd., 633 F.3d 50, 53 (1st Cir. 2011); Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004).

## Discussion

Cadell argues that New Hampshire law governs the interpretation of the Policy because the UOR truck involved in the accident was registered and garaged in New Hampshire. She further contends that, under New Hampshire law, she is entitled to UIM coverage under the Policy and can recover more than the $50,000 limit for bodily injury in the Policy's New Hampshire UIM Endorsement (the "New Hampshire Endorsement"). XL argues that Connecticut law applies because UOR and the majority of its vehicles are based in Connecticut. XL also contends that Cadell is not entitled to UIM coverage under either New Hampshire or Connecticut law. XL further argues that if Cadell is entitled to coverage, her recovery is limited to either the $40,000 limit in the Connecticut UIM Endorsement (the "Connecticut Endorsement") or the $50,000 limit in the New Hampshire Endorsement.[2]

---

[2] In response to Cadell's objection to XL's motion for summary judgment, XL filed a reply. Cadell moved for leave to file a surreply. XL objects to the motion, arguing that there are no extraordinary circumstances warranting a surreply and that, even if such circumstances existed, the format of the proposed surreply does not comply with the local rules. See LR 7.1(e)(3) & 5.1(a). The surreply responds to issues raised in the reply but does not change the outcome. Cadell's motion for leave to file the surreply is allowed.

3

A.  Choice-of-Law

The parties agree, appropriately, that New Hampshire choice-of-law rules apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1947). "[I]n the absence of an express choice of law validly made by the parties, the contract is to be governed, both as to validity and performance, by the law of the state with which the contract has its most significant relationship." Cecere v. Aetna Ins. Co., 145 N.H. 660, 662 (2001) (quoting Mathena v. Granite State Ins. Co., 129 N.H. 249, 251 (1987)). "Particularly in the context of insurance contracts, we have found that the State which is the principal location of the insured risk bears the most significant relationship to the contract . . . ." Glowski v. Allstate Ins. Co., 134 N.H. 196, 198 (1991) (internal quotation marks and citation omitted); see also Consol. Mut. Ins. Co. v. Radio Foods Corp., 108 N.H. 494, 497 (1968).

Where a policy covers risks in more than one state, it is considered a multiple risk policy, and the principal location of the insured risk may be in more than one state. See Cecere, 145 N.H. at 664. Thus, "where a policy covers risks in multiple States, the risk of each individual state is 'to be treated as though it were insured by a separate policy and the validity of and rights under the multiple risk policy as to this risk are to be governed by the laws of [that] state.'" Id. (quoting Ellis v. Royal Ins. Co., 129 N.H. 326, 331 (1987)); see also Restatement (Second) of Conflict of Laws § 193, comment f (1971).

4

XL does not dispute that the truck involved in the accident was registered and garaged in New Hampshire. It argues, however, that the principal location of the insured risk is Connecticut because UOR and the majority of its vehicles are based in that state. Therefore, XL contends that the Policy cannot be considered a multiple risk policy and cites Cecere in support of its argument.

In Cecere, the New Hampshire Supreme Court held that Massachusetts law applied to an insurance dispute involving a vehicle that, although registered in Massachusetts, was garaged in New Hampshire. 145 N.H. at 661-65. The court reasoned that the policy, which was a garage policy "designed primarily to afford protection against liability which might arise out of the operation of a . . . garage," had been issued to a Massachusetts dealership, and therefore the principal location of the insured risk was Massachusetts. Id. at 662 (internal quotation marks and citation omitted). In holding that Massachusetts law applied, however, the court noted that the dealership conducted operations only in Massachusetts and that "its insurance policy is designed to insure bodily injury or property damage resulting from activities located primarily upon the garage site." Id. at 663. The court further noted that its "conclusion in this case rests substantially, if not entirely, on the unique nature of garage insurance policies." Id. at 665.

Here, in contrast to Cecere, UOR had various locations, including one in New Hampshire. The Policy was an automotive

insurance policy, not a garage policy, and it covered vehicles registered and garaged in other states. Therefore, unlike in Cecere, the principal location of the insured risk was in multiple states, including at least Connecticut and New Hampshire. See Ellis, 129 N.H. at 332 (where a company's "business and insurance coverage extend to a number of States, including New Hampshire," and an accident involves a covered vehicle registered and garaged in New Hampshire, New Hampshire law governs); see also Diamond Int'l Corp. v. Allstate Ins. Co., 712 F.2d 1498, 1501 (1st Cir. 1983).

Accordingly, because the Policy was an automotive insurance policy covering vehicles located in different states, and because the truck involved in the accident was registered and garaged in New Hampshire, the primary location of the insured risk in this case was New Hampshire. Therefore, the court will interpret the Policy under New Hampshire law.

B. Cadell's Coverage

XL argues that Cadell is not entitled to coverage under the Policy for three reasons: (1) Anderson did not meet the definition of an "insured" under the Policy, (2) Cadell received workers' compensation benefits which bar coverage under the terms of the Policy, and (3) the Policy does not cover bodily injury to an employee injured in the course of his employment. Cadell disputes each argument.

Interpretation of the language of an insurance policy is a question of law. See Peerless Ins. v. Vt. Mut. Ins. Co., 151 N.H. 71, 72 (2004). The court "construe[s] the language of an insurance policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." Wilson v. Progressive N. Ins. Co., 151 N.H. 782, 788 (2005). "In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition." Rivera v. Liberty Mut. Fire Ins. Co., --- A.3d ---, 2012 WL 1648831, at *2 (N.H. May 11, 2012) (citing Carter v. Concord Gen. Mut. Ins. Co., 155 N.H. 515, 517 (2007)); see also Miller v. Amica Mut. Ins. Co., 156 N.H. 117, 119-20 (2007). Thus, "[t]he insurer asserting an exclusion of coverage bears the burden of proving that the exclusion applies." Rivera, 2012 WL 1648831, at *2.

1. Applicable endorsement

XL argues that the Connecticut Endorsement, and not the New Hampshire Endorsement, applies to Cadell's claim because the insured risk is located in Connecticut. As discussed above, however, the Policy is a multiple risk policy, and the primary location of the insured risk for the UOR truck involved in the accident is New Hampshire. Moreover, by its plain language, the Connecticut Endorsement applies only to "a covered 'auto' licensed or principally garaged, or 'garage operations' conducted

in, Connecticut . . . ." XL does not dispute that the truck involved in the accident was registered and garaged in New Hampshire. Therefore, the New Hampshire Endorsement, not the Connecticut Endorsement, is applicable to Cadell's claim.[3]

### 2. Definition of "insured"

Section B.2.a of the New Hampshire Endorsement defines an insured as follows: "Anyone occupying an insured motor vehicle or a temporary substitute for an insured motor vehicle. The insured motor vehicle must be out of service because of its breakdown, repair, servicing, loss or destruction."[4] (internal quotation marks omitted). XL argues that Anderson does not meet the definition of an insured for two reasons: (1) he was not "occupying" the truck at the time of the accident, and (2) even if he were deemed to be occupying the truck, he cannot be considered an insured because the truck was not out of service at the time of the accident. Cadell contends that although Anderson was not in physical contact with the truck at the time of the accident, he was still connected to the truck so as to be occupying it as the term is interpreted under New Hampshire law.

---

[3]The New Hampshire Endorsement uses only the term "uninsured" and not "underinsured." Under New Hampshire law, the term "uninsured" includes underinsured. See Revised Statutes Annotated ("RSA") 259:117.

[4]The Endorsement defines occupying as "in, upon, getting in, on, out or off."

8

Cadell further argues that the definition of an insured is not limited to those occupying out-of-service vehicles.

### a. Meaning of "occupying"

In interpreting the term "occupying" under an automotive insurance policy, New Hampshire courts apply the "vehicle orientation test." State Farm Mut. Auto Ins. Co. v. Cookinham, 135 N.H. 247, 249 (1992). "The vehicle orientation test requires that a claimant be engaged in an activity 'essential to the use of the vehicle' when the accident occurs." Id. "[A] claimant need not have physical contact with the vehicle in order to be 'occupying' it." D'Amour v. Amica Mut. Ins. Co., 153 N.H. 170, 173 (2006). "[U]nder the vehicle orientation test, 'occupying' may include the process of moving away from the vehicle to a 'place of safety.'" Id. However, where "a claimant has severed his or her connection to the vehicle then he or she is no longer occupying the vehicle." Miller, 156 N.H. at 120.

Here, the police report states that Anderson "was outside his truck at the rear of the vehicle talking to Salvatore Pintone" at the time of the accident. The truck "was parked inside a detail site on Rt 3 Northbound in the breakdown lane." The Occupational Safety and Health Administration ("OSHA") Fatality/Catastrophe Report states that at the time of the accident, "[e]mployees were preparing to remove waste containers (2-30 yard, 2-15 yard dumpsters) from public access highway."

The OSHA report further stated that the truck "was there to remove containers of contaminated soil."

For purposes of Cadell's motion, viewing these facts in the light most favorable to XL, Anderson was "occupying" the vehicle at the time of the accident. The record evidence shows that Anderson drove to and parked the vehicle at the work site. He was standing directly behind the truck preparing to load containers of waste into the truck when he was struck by McKenzie's vehicle. His purpose for being at the site and the work he was preparing to do was connected to the truck. Therefore, Anderson was engaged in activity essential to the use of the truck and had not severed his connection to the truck at the time of the accident.

### b. Out-of-service vehicles

To reiterate, section B.2.a. of the New Hampshire Endorsement defines an insured as "[a]nyone occupying an insured motor vehicle or a temporary substitute for an insured motor vehicle. The insured motor vehicle must be out of service because of its breakdown, repair, servicing, loss or destruction." XL asserts that even if Anderson were deemed to be occupying the truck at the time of the accident, the second sentence of the definition limits coverage to anyone occupying vehicles that are out of service at the time of the accident.

XL's interpretation of clause B.2.a is both illogical and unreasonable. XL's construction of the definition of an insured

10

would significantly reduce coverage by limiting it solely to accidents in which an individual is occupying an insured out-of-service vehicle. "[T]o accept such an interpretation would make the UIM coverage procured by the [plaintiff] virtually illusory." Chandler v. Am. Guarantee and Liab. Ins. Co., 2005 WL 2250836, at *6 (E.D. Ky. Sep. 15, 2005) ("Under Defendant's interpretation, one occupying an otherwise covered auto that was in working order would *never* receive the benefit of underinsured coverage. That interpretation is illogical."). The court will not adopt an interpretation that is inconsistent with the Policy when viewed as a whole. See Progressive N. Ins. Co. v. Argonaut Ins. Co., 161 N.H. 778, 782 (2011); Weeks v. Co-Operative Ins. Cos., 149 N.H. 174, 177-78 (1995); see also N. Sec. Ins. Co. v. Connors, 161 N.H. 645, 650 (2011) (if an insurance policy "is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer"). Therefore, Anderson was an insured for purposes of the New Hampshire Endorsement.[5]

---

[5]Because Anderson meets the definition of an insured under section B.2.a of the New Hampshire Endorsement, Cadell is also considered an insured under the Endorsement. Section B.2.b defines an insured as "[a]nyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'" Therefore, Cadell is considered an insured both in her capacity as the adminstratrix of Anderson's estate and individually.

3.  Workers' compensation exclusion

XL argues that because Cadell received workers' compensation benefits for the accident, the exclusion for those benefits in the Policy bars or reduces coverage for Cadell. Cadell concedes that she has received workers' compensation benefits but argues that under New Hampshire law, workers' compensation set-off provisions in insurance contracts are invalid. Section C.2 of the New Hampshire Endorsement provides that its coverage does not apply to "[t]he direct or indirect benefit of any insurer or self-insurer under any workers' compensation disability benefits or similar law."

In Merch. Mut. Ins. Grp. v. Orthopedic Prof'l Ass'n, 124 N.H. 648 (1984), the New Hampshire Supreme Court noted that "worker's compensation set-off clauses . . . [are] repugnant to . . . uninsured motorist statutes." Id. at 656. The court therefore held that "any policy provision which requires an uninsured motorist to suffer a reduction in the coverage paid for, by the amounts of workmen's compensation received by the insured, is an invalid restriction of the statutory scope of coverage." Id. at 655. The court "supported this holding by analogy to the collateral source rule, which prohibits subtracting collateral benefits from a plaintiff's recovery from a tortfeasor." Anderson v. Fidelity & Cas. Co. of N.Y., 134 N.H. 513, 518 (1991) (discussing holding in Merchants).

XL argues that Merchants has been superseded by statute, citing Rooney v. Fireman's Fund Ins. Co., 138 N.H. 637 (1994).

12

Rooney, however, addresses a different issue. The court held only that in light of RSA 281-A:13, which was enacted after the decision in Merchants, Merchants "cannot be relied upon as authority for denying a workers' compensation carrier the statutory right to assert a lien against an employee's uninsured motorist benefits." Id. at 640. Neither Rooney, nor any other supreme court decision or New Hampshire statute has abrogated the holding in Merchants that policy provisions which reduce UIM coverage by the amount of workers' compensation received by the insured are invalid. See Rivera, 2012 WL 1648831, at *2 ("Insurers are free to contractually limit the extent of their liability through use of a policy exclusion provided it violates no statutory provision."). Therefore, XL cannot deny or reduce coverage to Cadell based on workers' compensation benefits.

4. Bodily injury exclusion

XL argues that Cadell is not entitled to coverage because other sections of the Policy exclude coverage to the family of an employee who sustains bodily injury arising out of his employment with UOR (the "injury-during-employment exclusion"). Cadell concedes that the Policy contains the injury-during-employment exclusion, but argues that it is included only in the "Business Auto Coverage Form" as opposed to the New Hampshire Endorsement. Cadell further argues that the New Hampshire Endorsement has a separate list of exclusions which does not include the injury-during-employment exclusion. XL counters that the exclusions in

13

the Business Auto Coverage Form are applicable to the New Hampshire Endorsement unless specifically addressed and modified by the Endorsement.

The New Hampshire Endorsement provides that "[t]his endorsement modifies insurance provided under the following: BUSINESS AUTO COVERAGE FORM." The Endorsement lists various exclusions, including exclusions for bodily injuries sustained under specific conditions. It does not, however, include the injury-during-employment exclusion.

XL argues that the exclusion is applicable here because the Endorsement does not provide otherwise. In support, XL notes the following language in the New Hampshire Endorsement: "[w]ith respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement." XL argues that because the New Hampshire Endorsement does not specifically modify the injury-during-employment exclusion, it remains in effect.

In essence, XL argues that the provisions in the New Hampshire Endorsement supplement, but do not modify, the provisions found elsewhere in the Policy. This argument is belied, however, by certain exclusions, including those for workers' compensation benefits and damage from war, in the New Hampshire Endorsement which are also included in the Business Auto Coverage Form. If XL's interpretation were correct, the New Hampshire Endorsement would duplicate exclusions provided in the Coverage Form, making those exclusions mere surplusage. Such an

interpretation is unreasonable. See Int'l Surplus Lines Ins. Co. v. Mfrs. & Merchants Mut. Ins. Co., 140 N.H. 15, 19 (1995) ("We will not presume language in a policy to be mere surplus."); see also Argonaut, 161 N.H. at 782.

A reasonable reading of the Policy is that the provisions in the "Exclusions" section of the New Hampshire Endorsement are the only exclusions applicable under the Endorsement. Therefore, XL cannot deny coverage based on the bodily injury exception in the Business Auto Coverage Form.

Accordingly, Cadell is entitled to coverage under the New Hampshire Endorsement of the Policy.[6]

## C. Amount of Coverage

XL argues that if the court determines that Cadell is covered under the Policy, her coverage is limited to the $50,000 cap provided in the New Hampshire Endorsement.[7] XL further argues that it is entitled to reduce Cadell's coverage by $10,000, the amount Cadell received in her settlement with McKenzie's insurance company. Cadell concedes that XL is entitled to a set-off for what she received from McKenzie's

---

[6]The parties also dispute whether XL's payment of $5,000 in funeral expenses to Cadell acted as a waiver of any defenses to coverage. Because Cadell is entitled to coverage under the Policy, it is not necessary to address the arguments concerning whether XL waived the defenses it asserts in this action.

[7]XL initially argues that Cadell is limited to the $40,000 cap in the Connecticut Endorsement. As discussed above, the New Hampshire Endorsement, and not the Connecticut Endorsement, governs coverage in this case.

15

insurance company but argues that her coverage is not limited by the $50,000 cap in the New Hampshire Endorsement. Cadell contends instead that New Hampshire law entitles her to $1,000,000 of coverage, the Policy's limit of liability. She further argues that the court should stack the coverage by the number of vehicles covered under the Policy, two hundred, and therefore she is entitled to $200,000,000 in coverage.

1. <u>Policy Limit</u>

RSA 264:15 provides in part:

> No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness, or disease, including death resulting therefrom.

Under the statute, "when an insurer provides general liability coverage, it additionally must provide uninsured motorist coverage in the same amounts and limits." <u>Swain v. Emp'rs Mut. Cas. Co.</u>, 150 N.H. 574, 577 (2004). "The statute 'is intended to allow policy holders to protect themselves against injury from an uninsured motorist to the extent they protect themselves against liability.'" <u>Id.</u> (quoting <u>Wegner v. Prudential Prop. & Cas. Ins. Co.</u>, 148 N.H. 107, 109 (2002)); <u>see also</u> <u>Rivera</u>, 2012 WL 1648831, at *4.

The New Hampshire Endorsement provides a $50,000 limit for bodily injury. Under RSA 264:15, however, XL is required to provide UIM coverage in an amount equal to its general liability limit. The Policy has a general liability limit of $1,000,000.

XL argues that RSA 264:15 applies only to liability policies that were issued and delivered in New Hampshire and it is undisputed that the Policy was issued and delivered in Connecticut. XL cites Ellis in support of its argument.

In Ellis, the plaintiff sought to increase UIM coverage to the limits of the policy under RSA 264:15. See 129 N.H. at 334. The supreme court held that the policy "was neither issued nor delivered in [New Hampshire], and therefore [RSA 264:15] is inapplicable . . . ." Id. Ellis, however, was decided before the 1988 amendment to RSA 264:15 which removed the requirement that the insurance policy be issued and delivered in New Hampshire. Instead, RSA 264:15 now applies to an insurance policy covering "a vehicle registered or principally garaged in" New Hampshire.

XL does not dispute that the truck was registered and garaged in New Hampshire and does not provide any other basis for its argument that RSA 264:15 should not apply. Therefore, the limit on the New Hampshire Endorsement is equal to the $1,000,000 liability limit of the Policy. See Wegner, 148 N.H. at 109 ("the parties to an insurance contract may not by agreement limit the required coverage in contravention of the Financial Responsibility Law [RSA chapter 264].") (internal quotation marks and citation omitted).

2. <u>Stacking</u>

Cadell argues that neither the Policy nor the New Hampshire Endorsement precludes stacking of UIM coverage. Cadell contends that, therefore, the available coverage should be multiplied by two hundred, the number of vehicles insured under the Policy.

Section D.1 of the New Hampshire Endorsement provides the following limit of insurance:

> Regardless of the number of "insured motor vehicles," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from bodily injury sustained in any one "accident" is the Limit of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

It is clear that the New Hampshire Endorsement specifically and unambiguously precludes stacking.

Therefore, Cadell is entitled to a limit of $1,000,000 in coverage under the New Hampshire Endorsement, less the $10,000 Cadell received from McKenzie's insurance company.

D. <u>Award of Fees and Costs</u>

Cadell argues that she is entitled to an award of the fees and costs that she has incurred in bringing this lawsuit. RSA 491:22-b provides "[i]n any action to determine coverage of an insurance policy pursuant to RSA 491:22, if the insured prevails in such action, he shall receive court costs and reasonable attorneys' fees from the insurer." "The insured becomes entitled to the fees and costs once it obtains rulings that demonstrate that there is coverage under the . . . insurance policy."

18

EnergyNorth Natural Gas, Inc. v. Certain Underwriters at Lloyd's, 156 N.H. 333, 347 (2007).

XL does not address Cadell's request for costs and fees. As Cadell is entitled to coverage under the Policy, she can recover her costs and reasonable attorneys' fees incurred in bringing this suit.

## Conclusion

For the foregoing reasons, the plaintiff's motion for leave to file a surreply (document no. 30) is granted. The plaintiff's motion for summary judgment (document no. 14) is granted except as to the claims for stacking coverage, which is denied. The defendant's motion for summary judgment (document no. 23) is denied except as to the claims for stacking coverage and the offset for the plaintiff's settlement with McKenzie's insurance company, which is granted.

The deputy clerk will schedule a telephonic conference with the parties to discuss the status of the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

June 20, 2012

cc: John C. Barker, Esq.
John E. Durkin, Esq.
Paul Michienzie, Esq.